May it please the Court, Max Ray for Franklin Baxter in this Social Security Disability case. This is a case where the history is important. This gentleman has a long and strong work and earnings history. He worked up to August of 2000 as a Terminal Manager for USF Redaway. He left that job. He was having trouble coming in on time. He was going home and taking naps in the afternoon. By March 2001, two other short-term jobs had ended. These both required eight-hour work days, although one was three days a week, one was five days a week. They ended because of employer issues, not because of the claimant. Then there were two more years in which this gentleman tried to make a go of self-employment part-time out of his home before March 31, 2003, which is the alleged onset date. The claimant and the claimant's wife were found generally credible. The judge qualified that, saying that the testimony, you know, the qualification was that not all work was precluded. But preclude all work is not the standard for disability. A person needn't be precluded from all work in order to give credible testimony. Well, you know, as I read the record here, the main problem was for the ALJ. Not so much that he didn't suffer from, what is it, lymphocyte? It's a form of leukemia, yes. Yes, leukemia. The ALJ, when he looked at the medical records, noted that they only indicated that his fatigue was mild. Yes, that is probably the most troubling aspect. And that he didn't need ongoing treatment. May I address the treatment part first and then move to the mild disability? Go ahead. The treatment that they were talking about, I mean, the claimant was going in regularly and seeing the doctor to monitor his blood levels. The treatment that they were not doing is chemotherapy. Claimant's position is that the administrative law judge simply is not a doctor and is not capable of using the failure to prescribe chemotherapy as a measure of claimant's level of functioning because that's such a multifactorial issue. It's not like giving a person pain medicine for a sore back. Chemotherapy has a lot of other considerations besides acute care involved. The question of describing the fatigue as mild also has to be viewed within the context that it's a cancer-like condition that's being addressed. And what's mild in the context of one condition may be much more disabling in the context of another. The treatment notes are not there to document disability. The Orme case explained that. They are there to guide care and provide continuity. And when the treating physician, the physician who had known this gentleman for a long time, was finally asked to address the specifics of work capacities, he described this gentleman as unable to sustain full-time work activity. There needs to be clear and convincing reasons to dismiss the claimant's testimony and the assessment by the treating doctor. And under these circumstances, our position is that, yes, it was described as mild, but considering that it's an oncological condition and considering the treating doctor came out later and summarized it all, that that's not a clear and convincing basis. What relief are you asking? Well, at this stage, a person's pleased to have any relief, to be quite honest, Your Honor. But in this case, if you find that this gentleman should have been credited in describing his inability to persist full-time, then he isn't able to do the eight-hour-a-day work that he had done in the past, so he gets past Step 4. If he gets into Step 5, if you're not able to do eight-hour-a-day work, the commissioner cannot meet their burden because it's Step 5. Well, the ALJ never got to Step 5, correct? The ALJ did not. He found him not disabled at Step 4. But he could do his past... That's the judge's finding, yes, Your Honor. That's our argument. Okay. Thank you. May it please the Court. My name is Willie Lee, and I represent the Commissioner of Social Security. First off, I would like to address Mr. Ray's argument that the standard here is clear and convincing. It actually is not. It should be specific and legitimate, and that's because there is contradictory medical evidence, as we've already discussed. What's contradictory in this record about the medical evidence? Well... Dr. Eliason was pretty consistent, as well as the other oncologists, that this gentleman suffers from a form of... Right, but it did not arise at the level of 5 hours of rest per day, necessarily. What they found was mild symptoms, that he was asymptomatic, robust-appearing, stable, that he stayed very active. This is from Dr. Eliason, the primary care physician. And on that, I'd like to make a distinction. How could he stay active? The AIJ noted his activities, which included walking a mile on certain days from 2002 to 2004. Do you think he should just be, in order to qualify for benefits, he should just be stuck in the house in bed? I'm sorry, Your Honor? Do you think that in order to qualify for benefits, he must show that he can only stay in the house in bed and maybe watch TV? Certainly not, Your Honor. But the medical evidence did not support any additional level of limitation beyond that. Counsel, wasn't there evidence in the record that he told his wife he was going to walk for a mile, but in fact he just walked around the block because he wasn't able to go any further? Yes, Your Honor, that was in the record. But there was also evidence that he was driving, doing housework, mowing a small lawn. How do all those relate to his ability to perform work on an eight-hour level? They do not necessarily indicate that he can work a full eight hours a day. I really admit that. But when you're evaluating a claimant's alleged symptoms and credibility, you can't just look at what he says he can do. You also have to look at the medical evidence. Well, medical evidence is probably the largest factor, I believe, according to Rawlings v. Massimeri. So in addition to Mr. Ray's argument that he never required chemotherapy, it's actually the fact that Dr. Petrunian, who was the treating oncologist, never felt that he required any therapy. This was in February 2006. What kind of therapy is available to somebody that has lymphoma or leukemia? I can't speak definitively as far as medical evidence is concerned, but in my research I saw that there's radiation, there's antibody treatments, perhaps medication. But the point is that- It's usually chemotherapy, isn't it? I'm sorry? Is the medication usually chemotherapy? That's correct, Your Honor. Doesn't radiation have its own side effects? That is correct, Your Honor, yes. So usually doctors wait until the very last point in time to try and do those type of things, don't they, because of the side effects? I don't know for sure, Your Honor. But the fact that he never required any treatment from his diagnosis all the way through 2006, under our regulations that must indicate something about his level of impairment. Counsel. Yes, Your Honor. The thing that bothers me most about the ALJ's finding is that he gave the assessment by the treating physician no weight. Yes. And is there any case authority to support the proposition that the ALJ's decision to give the treating physician's assessment no weight is supported by substantial evidence in the record when there's conflict in evidence? I believe, well, I think that's addressing two points. The case authority in that situation would be Bayless v. Barnhart, I believe. What does Bayless v. Barnhart say that would support the ALJ giving absolutely no weight to the treating physician assessment? Well, even if a treating physician provides an opinion, if that opinion is not supported by the substantial evidence and what remains is only the claimant's subjective symptoms, then you can reject that opinion. I thought Bayless v. Medical Opinion was directly contradicted by the physician's own notes. Right. And I believe that that contradiction is in this case as well, in which Dr. Eliason, the primary care physician, like I said, found that he was doing quite well. He was robust appearing. All this in context of his medical assessment of the fellow's condition? I mean, he's not evaluating him over time, as he sees his patient over time. He's not evaluating him on a daily basis whether or not he's capable of working. Well, if we don't have- He's looking at him as a person, as an individual who's been diagnosed with leukemia. Right. There's no dispute about that diagnosis, as I understand it. Right, right. And that a diagnosis alone cannot determine a claimant's limitations after that, just based on a diagnosis alone. I don't know. You know, but Mr. Baxter's consistent complaints were that he had to come home and sleep from work. He had to come home from work and take naps. And I think Dr. Eliason's note does that. When he does that capacity assessment, he notes that Baxter needs at least six hours a day of rest. Right. Well, I'd like to direct, Your Honors, to December 2005 treatment record from Dr. Eliason, who stated that Mr. Baxter stayed very busy up until the past couple of months, that he stayed very active, that he had no shortness of breath. And he retired us in that very recently due to-not due to lack of energy. I don't understand why that was in there, but that's something that Dr. Eliason said. So, in a way, it was internally contradictory to his opinion. Now, in fact, I mean, it gave some weight to Mr. Baxter's credibility in that he found that, well, like Mr. Reyes said, he's generally credible. He didn't find that he had no impairments or limitations whatsoever. But he gave no weight to the physician's assessment. Right. And that, I think, is based mostly due to the medical evidence here. I mean, it supported-the opinion supported somewhat through the mild limitations that he noted. But as far as five hours a day of resting and the other fatigue-related limitations, the ALJ found that it was not supported. And we believe that the evidence substantially supports that, if not fully. You know, sometimes I go to my doctor and he says, there'll be some mild pain. It hurts like heck. How do I assess what the doctor says is mild? Well, over time, they said it was mild. I mean, if there were contradictions sometimes that you dispute what your doctor reported versus what you reported, I think that would be vetted out over time. But it was never beyond mild here. And the fact that-or rather the argument that Mr. Reyes raised, that this is all related to care. Well, he didn't need care. So I'm not sure how-I'm not sure how else to interpret this evidence. Let me ask you a question. Yes, Your Honor. Suppose that-well, I asked counsel what he was asking for here. And he said, over a man, basically there's nothing further to do. What's your position here if we were to say that substantial evidence does not support ALJ's finding except four? Well- What do we do? Right. If Your Honor's find that there is error here in how the ALJ interpreted, then I think we should remand for consideration again because the medical evidence is there. It's been there. It's since-and remember the relevant period here was from March 2003 to June 2004. It's a very short period. And both doctors, from diagnosis of leukemia in 2002 all the way past 2004, even up to 2006, kept finding mild symptoms. So I think re-evaluation would be appropriate if Your Honor's found error in this case. If the ALJ credited the treating physician's assessment, would that change the outcome in this case? If he was required to credit that assessment, then yes. A person who cannot or who must rest five hours a day, we agree, cannot perform any substantial gainful activity. Okay. Okay. Thank you, Your Honors. And- I have nothing to add. Thank you. Matter submitted. Our next case for argument is Phillips v. Lithia Motors.
judges: Paez, Rawlinson, Collins